UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DIANA JO TORINA,

                           Plaintiff,         Case # 17-CV-1216-FPG

v.                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

**INTRODUCTION**

Plaintiff Diana Jo Torina brings this action pursuant to the Social Security Act seeking review of the denial of her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") applications. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 13. For the reasons that follow, the Commissioner's motion is GRANTED and Torina's motion is DENIED.

**BACKGROUND**

On March 30, 2010, Torina protectively applied for DIB and SSI with the Social Security Administration ("the SSA"), alleging disability since October 12, 2009. Tr.[1] 153-63. After testifying at two hearings before an Administrative Law Judge, Torina received an unfavorable decision on her applications. Tr. 19-89. After the Appeals Council denied her request for review, Torina appealed to his Court and, on December 24, 2014, the parties stipulated to remand her case for further proceedings. Tr. 1-6, 556-57. Accordingly, the Appeals Council issued an order vacating the unfavorable decision and remanding Torina's case. Tr. 552-54.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

1

On September 14, 2016, Torina and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Sharon Seeley ("the ALJ"). Tr. 494-549. On January 6, 2017, the ALJ issued an unfavorable decision. Tr. 471-86. This became the Commissioner's final decision because the Appeals Council did not assume jurisdiction of the case. *See* 20 C.F.R. §§ 404.984(a), 416.1484(a). This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Torina's claim for benefits under the process described above. At step one, the ALJ found that Torina had not engaged in substantial gainful activity since the alleged

onset date. Tr. 474. At step two, the ALJ found that Torina has three severe impairments: degenerative disc disease of the cervical spine; bilateral carpal tunnel syndrome, status post 2011 carpal tunnel release; and osteoarthritis of the hands. Tr. 474-77. At step three, the ALJ found that these impairments, alone or in combination, do not meet or medically equal any Listings impairment. Tr. 477.

Next, the ALJ determined that Torina retains the RFC to perform light work[2] with additional limitations. Tr. 478-83. Specifically, the ALJ found that Torina can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; can sit, stand, and walk for six hours total in an eight-hour workday; can frequently balance, climb stairs, handle, and finger; can occasionally, stoop, kneel, crouch, crawl, reach overhead, and operate a motor vehicle; cannot be exposed to hazards like unprotected heights or moving machinery; and can tolerate occasional exposure to smoke, fumes, or other pulmonary irritants, extreme heat or cold, humidity, wetness, and vibrations. Tr. 478.

At step four, the ALJ found that Torina cannot perform her past relevant work. Tr. 484. At step five, the ALJ determined that Torina can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 484-85. Specifically, the VE testified that Torina can work as a hostess, photofinishing counter clerk, and usher. Tr. 485. Thus, the ALJ concluded that Torina is not disabled. Tr. 485-86.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

**II.   Analysis**

Torina argues that remand is required because: (1) portions of the ALJ's RFC assessment lack substantial evidence; (2) the ALJ mischaracterized record evidence related to Torina's daily activities; and (3) the RFC assessment lacks mental limitations even though the ALJ determined that Torina has nonsevere mental impairments. ECF No. 10-1 at 19-30. The Court addresses these arguments in turn below.

**A.   RFC Determination**

A claimant's RFC reflects what he or she "can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To make the RFC determination, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)); *see also* 20 C.F.R. § 416.945(a). The ALJ assesses RFC "based on all of the relevant medical and other evidence." *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

Torina argues that the RFC determination lacks substantial evidence because the ALJ incorrectly found that she can frequently handle and finger and can stand and walk for six hours total in an eight-hour workday. ECF No. 10-1 at 19-25.

**1.   Handling and Fingering**

The ALJ found that Torina can frequently handle and finger, which means she can perform these activities one-third to two-thirds of an eight-hour workday, or about 2.5 to 5.5 hours. Tr. 478; *see* SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983). In making this finding, the ALJ relied on three medical opinions and various treatment notes.

In June 2010, consultative examiner Dr. Donna Miller opined that Torina has mild limitation in her ability to grasp and grip. Tr. 355. The ALJ gave partial weight to this opinion because Dr. Miller examined Torina and the opinion "accurately reflects" that Torina has "some limitations" in exertional functioning, but does not define the term "mild" or provide a specific function-by-function analysis. Tr. 482; *see* 20 C.F.R. §§ 404.1527(c)(1)(3), 416.927(c)(1)(3) (when an ALJ evaluates a medical opinion, she considers whether the source examined the claimant and whether the opinion is well-supported and explained).

In September 2011, Dr. Cara Fininzio, Torina's treating physician, opined that Torina can only occasionally handle and finger, which means she can do these activities "very little" up to one-third of the workday, *see* SSR 83-10, 1983 WL 31251, at *5, and is "very limited" in her ability to use her hands. Tr. 395, 455. Because Dr. Fininzio rendered these opinions just two weeks after Torina's carpal tunnel release surgery, the ALJ gave them limited weight. Tr. 482. Specifically, the ALJ found that the opinions were "not reflective of [Torina]'s functioning throughout the period at issue." *Id.* She also pointed out that Dr. Fininzio was "unsure" whether Torina's functional limitations would last for 12 months and opined that her carpal tunnel condition would last only four to six months. *Id.* (referring to Tr. 398, 454-55).

In further support of her decision to discount Dr. Fininzio's opinion, the ALJ pointed out that by December 2011, four months after the carpal tunnel surgery, Torina's treatment notes documented near-normal hand strength. *Id.* (citing Tr. 718). The ALJ also noted that in July 2014, Torina had intact hand and finger dexterity, bilateral grip strength of 4/5, and only a mildly decreased ability to zip, button, and tie. *Id.* (citing Tr. 917). Based on all of the above, the ALJ concluded that Dr. Fininzio's opinion was "not consistent with the record for any period other than the period within a few months after [Torina]'s carpal tunnel surgeries." Tr. 482. In accordance

6

with the regulations, the ALJ was entitled to discount Dr. Fininzio's opinion based on its consistency with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Torina asserts that the ALJ should have contacted Dr. Fininzio to get an updated opinion and determine whether her opined hand limitations were only temporary in light of the recent carpal tunnel surgery, and that the ALJ's failure to do so violated the Appeals Council's remand order. The Court disagrees. In its remand order, the Appeals Council directed the ALJ to evaluate Dr. Fininzio's opinion and noted that, "[a]s appropriate," the ALJ "*may* request" that Torina's medical sources provide additional evidence or further clarification about their opinions. Tr. 553 (emphasis added); *see also* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (effective Mar. 26, 2012 to Mar. 26, 2017) (noting that the ALJ "*may* recontact" the claimant's medical sources when the evidence before the ALJ is inconsistent or insufficient (emphasis added)). The Appeals Council did not specifically require the ALJ to contact Dr. Fininzio.

Moreover, if there is an issue with a physician's report, "the ALJ must seek clarification and additional information from the physician, as needed, *to fill any clear gaps* before rejecting the doctor's opinion." *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 504 (S.D.N.Y. 2014) (citations omitted) (emphasis added). No such gaps existed here—the ALJ had ample evidence before her about Torina's hand and wrist issues that post-dated her surgery and Dr. Fininzio's opinion. Importantly, in July 2014, consultative examiner Dr. Hongbiao Liu opined that Torina has only mild limitation in her ability to perform fine manipulation with her hands. Tr. 918. The ALJ gave partial weight to this opinion because Dr. Liu examined Torina and his opinion was consistent with his examination findings, but he did not define the term "mild" or provide a specific function-by-function analysis. Tr. 483; *see* 20 C.F.R. §§ 404.1527(c)(1)(3), 416.927(c)(1)(3) (when an ALJ evaluates a medical opinion, she considers whether the source examined the

7

claimant and whether the opinion is well-supported and explained). The ALJ also considered treatment notes from Dr. Fininzio from July 2012 to August 2015 that documented both positive and negative findings related to Torina's hands and wrists. Tr. 481 (citing Tr. 755-59, 792-93, 794, 800).

Although Torina cites record evidence that she believes demonstrates a "less than frequent" ability to handle and finger, the Court is not concerned with whether substantial evidence supports her position; rather, the Court must decide whether substantial evidence supports the ALJ's decision and defer to the ALJ's resolution of conflicting evidence. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). With this in mind and based on the opinions and treatment notes discussed above, the Court finds that the ALJ's determination that Torina can frequently handle and finger is supported by substantial evidence.

### 2. Standing and Walking

The ALJ found that Torina can stand and walk for six hours total in an eight-hour workday. Tr. 478. This finding is identical to Dr. Fininzio's opinion, to which the ALJ afforded great weight. Tr. 394, 482; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (noting that the ALJ will give "controlling weight" to a treating physician's opinion when she finds it well-supported and not inconsistent with other substantial record evidence). In a separate assessment form, Dr. Fininzio opined that Torina has "no limitations" in her ability to stand and walk. Tr. 455. Torina asserts that, because Dr. Fininzio opined that she could stand and walk for six hours in an eight-hour workday and also opined that she has no limitations in these areas, the ALJ should have contacted the ALJ to "clarify the discrepancy." ECF No. 10-1 at 23. The Court disagrees.

8

First, the ALJ resolved any potential inconsistency between Dr. Fininzio's opinions in Torina's favor when she adopted the more restrictive opinion. Second, an ALJ does not have to "re-contact a treating physician simply because medical evidence is internally inconsistent, like when there are minor or irrelevant inconsistencies;" rather, an ALJ must contact the physician when "a conflict or ambiguity *must* be resolved to make the disability determination." *Hanel v. Berryhill*, No. 17-CV-482-FPG, 2018 WL 4573264, at *4 (W.D.N.Y. Sept. 25, 2018) (citations and quotation marks omitted) (emphasis in original). That was not the case here—the slight conflict between Dr. Fininzio's assessments did not need to be resolved to decide Torina's case.

The ALJ also afforded partial weight to Dr. Liu's opinion that Torina has mild limitation in her ability to engage in prolonged walking. Tr. 482-83, 918. Torina argues that Dr. Liu's opinion is "too vague" to support the ALJ's determination that she can walk for six hours, but the Court disagrees. It was reasonable for the ALJ to conclude that Torina could walk for six hours in an eight-hour workday based on Dr. Liu's opinion of only mild limitations, coupled with the opinion of Dr. Fininzio, a treating physician.

The ALJ also considered various record evidence related to Torina's ability to stand and walk, such as cervical and lumbar spine examination findings and her daily activities, treatment history, and success with pain medication. Tr. 479, 481-83.

Based on all of the above, the Court finds that the ALJ's determination that Torina can stand and walk for six hours total in an eight-hour workday is supported by substantial evidence.

**B.     Daily Activities**

Next, Torina asserts that the ALJ mischaracterized record evidence related to her daily activities. ECF No. 10-1 at 25-28. Specifically, Torina argues that the ALJ gave undue weight to her ability to babysit her grandchildren and care for her fiancé's elderly mother. *Id.*

In determining whether a claimant is disabled, an ALJ considers all of her alleged symptoms and the extent to which they are consistent with the record evidence and affect her ability to perform daily activities and to work. 20 C.F.R. §§ 404.1529(a), 416.929(a) (effective June 13, 2011 to Mar. 26, 2017); *see also* SSR 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). But the claimant's statements alone will not establish disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). When an ALJ evaluates a claimant's alleged symptoms, she follows a two-step process: first, she considers whether the medical evidence shows an impairment that "could reasonably be expected to produce the pain or other symptoms alleged," and second, if such an impairment is shown, the ALJ evaluates the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit her work capacity. *Id.* §§ 404.1529(a), (c)(1), 416.929(a), (c)(1).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, an ALJ considers: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. *Id.* §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

The record reveals that Torina babysat her grandchildren three days a week, but that she did "absolutely nothing" for them because they were mostly self-sufficient. Tr. 210, 506, 518-20. Torina also indicated that she cared for her fiancé's 80-year-old, disabled mother, who could not do anything for herself. Tr. 206. Torina cooked for her, bathed her, and helped her use the

bathroom and "do daily things." *Id.* She indicated that an aide also helped the elderly woman for two hours a day by bathing and dressing her and cleaning her room. *Id.*

The ALJ noted these activities in finding that Torina had only mild limitation in her daily activities and social functioning and that her statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record evidence. Tr. 475, 479. Although Torina asserts that the ALJ made these findings because she "relied heavily" on her ability to care for an elderly woman and babysit, the ALJ also relied on other evidence in support of her decision.

As to Torina's daily activities, the ALJ also considered that she could cook, clean, do dishes and laundry, vacuum, shop once a month, use public transportation, go out every day, and watch television. Tr. 475, 479, 483. In accordance with the factors listed above, the ALJ also considered Torina's treatment history and medication use, including that she was discharged from physical therapy due to poor attendance and that her pain was well-controlled with a certain prescription. Tr. 483. The ALJ also considered the objective medical evidence that showed "some limitations in [her] cervical spine range of motion and weakness in her hands." *Id.*

Although a claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted), the ALJ may properly consider the claimant's daily activities—such as babysitting and caring for an elderly individual— when assessing her statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Moreover, the ALJ did not use these activities as the sole reason to discount Torina's statements. Thus, the Court finds that the ALJ did not err by finding that Torina's daily activities weighed against her disability allegations and that she properly analyzed Torina's statements.

C.     **Lack of Mental RFC Limitations**

Finally, Torina asserts that the RFC determination should have included mental limitations because the ALJ found that she had non-severe mental impairments. ECF No. 10-1 at 28-30.

At step two of the disability analysis, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that significantly limits the claimant's physical and/or mental ability to do basic work activities. *Id.* §§ 404.1520(c), 404.1521, 416.920(c), 416.921.

The presence, diagnosis, or treatment of an impairment is insufficient to render a condition "severe." *Bergeron v. Astrue*, No. 09-CV-1219 MAD, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quotation marks and citation omitted). Rather, severity is determined by the functional limitations that an impairment imposes. *See Tanner v. Comm'r of Soc. Sec.*, No. 5:15-CV-577 (TJM/ATB), 2016 WL 3189754, at *4 (N.D.N.Y. May 11, 2016). The ALJ will find an impairment "nonsevere" if the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on the claimant's ability to work. *Perez v. Astrue*, 907 F. Supp. 2d 266, 271 (N.D.N.Y. 2012); *see also* SSR 85-28, 1985 WL 56858, at *3 (S.S.A. Jan. 1, 1985). The ALJ must consider severe and nonsevere impairments when assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

Here, viewing the ALJ's decision as a whole, the Court finds that the ALJ did not err by omitting mental limitations from the RFC determination. First, in explaining the legal standard, the ALJ noted that her RFC determination reflected the degree of limitation she found due to Torina's mental impairments. Tr. 477.

Additionally, at step two, the ALJ discussed Torina's mental impairments and provided a detailed analysis of the four broad functional areas—daily activities, social functioning,

concentration, persistence, or pace, and episodes of decompensation—as required by Listing 12.00C for evaluating mental disorders. Tr. 475-76. At step two, the ALJ also considered the mental opinions provided by a consultative examiner and state agency consultant. Tr. 476. Those doctors indicated that Torina did not have mental limitations, except for an impaired ability to handle stress. *Id.* The ALJ rejected the notion that Torina had issues handling stress, and Torina does not argue that the ALJ erred in this regard. Based on all of the above, the ALJ concluded that the opinions, examination results, and other record evidence indicated that Torina had only mild functional limitations related to her mental impairments. *Id.*

Although the ALJ did not explicitly discuss Torina's nonsevere mental impairments in her RFC analysis, the Court is satisfied that the ALJ considered those impairments based on her step two discussion and the records that she considered in reaching the RFC. *Cf. Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have . . . explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

For example, in her RFC analysis the ALJ cited portions of Dr. Fininzio's treatment notes, which contained evidence that Torina felt "down, depressed, or hopeless" or had "[l]ittle interest or pleasure in doing things." Tr. 481 (citing Tr. 751, 755). Although the ALJ cited these notes for a different reason, the Court can infer that the ALJ considered the entire document. Moreover, other treatment notes from Dr. Fininzio, although not specifically cited by the ALJ, informed the ALJ that Torina complained of anxiety and depression. *See, e.g.*, Tr. 737, 739-40, 743-44, 748. The ALJ also considered Dr. Liu's opinion in her RFC analysis and, although Dr. Liu did not specifically opine as to Torina's mental capacity, he noted that Torina "has a history of anxiety

13

and depression" and diagnosed her with those conditions, thereby notifying the ALJ of these issues. Tr. 482-83 (citing Tr. 915-18).

Although Torina cites record evidence showing that providers treated her for anxiety and depression, that she required mental health medications, and that she testified to anxiety symptoms, this does not render her mental impairments severe or indicate that additional RFC limitations were warranted. *See Hayes v. Berryhill*, No. 17-CV-6354-FPG, 2018 WL 3069116, at *3 (W.D.N.Y. June 21, 2018) ("The mere presence of an impairment, or the fact that the claimant has been diagnosed or treated for an impairment, is insufficient to render a condition 'severe.'"); 20 C.F.R. §§ 404.1545(c), 416.945(c) (when the SSA assesses a claimant's mental abilities, it assesses "the nature and extent of [the claimant]'s *mental limitations and restrictions*," not whether a mental impairment exists (emphasis added)). Accordingly, for all the reasons stated, the Court finds no error on this basis.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 31, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court